UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

RODOLFO KORBER,
ADELINA KORBER,

                Plaintiffs,

WAUKESHA MEMORIAL HOSPITAL,
WAUKESHA GENERAL &
VASCULAR SURGERY, S.C.,[1]

                Involuntary Plaintiffs,
      v.                                                Case No. 03-C-1416

K.T.M.C. LIMITED PARTNERSHIP,
ALTA HEALTH & LIFE INSURANCE COMPANY,

                Defendants.
_____

**ORDER**

Plaintiffs Rodolfo and Adelina Korber allege that they wrongfully incurred medical expenses between October 31, 2001 to February 1, 2002, because defendants K.T.M.C. Limited Partnership ("KTMC") and Alta Health & Life Insurance Company ("Alta") were in the midst of a dispute concerning the termination of an employee welfare benefit plan that covered the plaintiffs. The plaintiffs allege that neither KTMC nor Alta provided the plaintiffs with sufficient notice that the welfare benefit plan would expire or that their claim for benefits had been denied, all in violation of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. The plaintiffs seek "appropriate equitable relief to redress

---

[1] On October 25, 2005, plaintiffs Rodolfo and Adelina Korber and involuntary plaintiff Waukesha General & Vascular Surgery, S.C. filed a stipulation for the dismissal of Waukesha General & Vascular Surgery. The court signed the order for dismissal on October 27, 2005.

the damages caused to the plaintiffs." (Second Am. Compl. 6.) KTMC asserts a cross-claim against Alta alleging that Alta breached provisions of two contracts: (1) a Service Contract whereby Alta agreed to make benefit determinations in accordance with the Plan, and (2) a Stop-Loss Contract whereby Alta agreed to reimburse KTMC for benefits paid beyond some threshold amount. Like the plaintiffs, KTMC argues that it too was given insufficient notice, pursuant to the terms of the Services Contract, of Alta's intent to terminate the Service Contract.

Alta moves for summary judgment on the plaintiffs' claims on the basis that Alta is not an employee benefit plan, a fiduciary, or a plan administrator and, therefore, is not liable under ERISA. Alta also argues that the plaintiffs seek relief that is not available under ERISA. KTMC has not moved for summary judgment on the plaintiffs' claims. However, KTMC moves for summary judgment on its cross-claim against Alta. Alta has filed a cross-motion for summary judgment on KTMC's cross-claim. For the reasons stated below, neither Alta nor KTMC have adequately shown that they are entitled to summary judgment.

## BACKGROUND

I. The Plan, the Service Contract, and the Stop-Loss Contract

In the fall of 2001, Rodolfo Korber was an employee of KTMC, and both he and his spouse, Adelina, were covered by an employee welfare benefit plan (the "Plan") which provided coverage for certain medical expenses.[2] (Alta's Proposed

---

[2] A copy of the Plan is filed as Exhibit A to the May 23, 2005 Affidavit of Meg Vergeront and again as Exhibit A to the June 1, 2005 Affidavit of Patricia Fry. All further citations to the Plan will be set forth as "(Plan __)."

Findings of Fact in Support of Summary Judgment ("Alta's PPFOF") ¶¶ 2-3.) According to the terms of the Plan, KTMC established the Plan, (Plan 4), and the agent for service of legal process is the "Plan Trustee or the Plan Administrator, RAINO A. KOCH, OFFICE MANAGER." (Plan 36.) The medical benefits offered under the Plan are "self-funded benefits," (Plan 5), for which "the Plan Administrator [Raino A. Koch] has the exclusive and full discretion and authority to determine the benefits and amounts payable and to construe and interpret all terms and provisions of this booklet." (Plan 29.) The Plan states that KTMC alone is responsible for the self-funded benefits:

> The Employer [KTMC] is fully responsible for the self-funded benefits. Alta processes claims and provides other services to the Employer related to the self-funded benefits. Alta does not insure or guarantee the self-funded benefits.

(Plan 5.) The Plan states that Alta simply "provides Contract Administration." (Plan 36.)

The Services Contract and the Stop-Loss Contract further clarify Alta's responsibilities to the Plan and to KTMC. The Service Contract entered into on January 2, 2001, between KTMC and Alta provides that Alta will perform services to the Plan including initial benefit determination and payment in accordance with the terms of the Plan.[3] (Alta's PPFOF ¶ 8; Services Contract 1-3, 12.) Consistent with the Plan, the Services Contract states that KTMC has the authority to control and manage the Plan and that "under no circumstances will [Alta] be designated as Plan

---

[3]A copy of the Services Contract is filed as Exhibit A to the Affidavit of Patricia Fry that was filed on January 13, 2006. All further citations to the Services Contract will be set forth as "(Services Contract ___)."

Administrator or a fiduciary of the Plan." (Services Contract 4.) The Services Contract provides that Alta pays claims out of its own pocket and KTMC reimburses Alta for claims paid. (Alta's PPFOF ¶ 13; Services Contract 2-3.) KTMC is required to make sufficient funds available in a pre-established bank account to satisfy KTMC's financial obligations to Alta. (Moldenhauer Aff. ¶ 4; Services Contract 3.) However, the Stop-Loss Contract entered into on January 1, 2001, between KTMC and Alta provides that Alta reimburses KTMC for benefit claims that KTMC pays over a threshold amount.[4] (Alta's Additional Proposed Findings of Fact in Supp. of Summ. J. ¶ 3; Stop-Loss Contract 5.) The record does not contain sufficient information to determine what proportion of costs Alta and KTMC would bear under the Plan and the contracts if the Korbers' claim for benefits were granted.

The Services Contract and the Stop-Loss Contract could be terminated by either KTMC or Alta upon 60 days written notice or by Alta for KTMC's failure to fund the pre-established bank account. (Alta's Proposed Findings of Fact in Opp'n to KTMC's Summ. J. on Cross-cl. ¶ 14; Services Contract 5; Stop-Loss Contract 7.)

The Services Contract contains the following indemnification provision:

[Alta] will not be liable for any act or failure to act, in the exercise of its powers and performance of its duties hereunder, which act or failure to act is performed by [Alta] in good faith. [Alta] agrees to indemnify, protect and hold [KTMC] harmless from any loss, liability, claim or expense (including attorney's fees, court costs and expenses of litigation) arising out of the dishonest, fraudulent or criminal acts of [Alta's] employees, acting alone or in collusion with others.

---

[4]A copy of the Stop-Loss Contract is filed as Exhibit B to the Affidavit of Deanne Moldenhauer that was filed on June 6, 2006. All further citations to the Stop-Loss Contract will be set forth as "(Stop-Loss Contract ___)."

(Services Contract 5.) The Services Contract states that it shall be governed by and construed in accordance with the laws of the State of Indiana. (Services Contract 8.)

II.     Adelina Korber's claim for medical benefits

On October 31, 2001, Adelina underwent surgery to remove a tumor. (Second Am. Compl. ¶ 17.) The surgery was performed at involuntary plaintiff Waukesha Memorial Hospital by a surgeon affiliated with involuntary plaintiff Waukesha General & Vascular Surgery, S.C. (*Id.*) During the first week of November 2001, Adelina was diagnosed with cancer. (*Id.* ¶ 18.) Adelina was discharged from the hospital on November 4, 2001, and underwent outpatient care and treatment, including chemotherapy treatments, during December 2001 and January 2002. (Affidavit of Adelina Korber ("Korber Aff.") ¶ 7, Feb. 21, 2006.)[5]

On December 24, 2001, Alta informed Adelina for the first time that Alta would not pay for her medical expenses. (Korber Aff. ¶ 8.) In subsequent statements, Alta stated that it would not pay any benefits for Adelina's medical expenses because the health insurance coverage provided by Alta to KTMC and its employees had been retroactively cancelled by Alta effective October 1, 2001. (Korber Aff. ¶ 13.) Adelina contacted an Alta representative who indicated that the Plan was terminated, effective October 1, 2001, because KTMC failed to pay premiums to Alta. (Korber Aff. ¶ 17.) Adelina contacted a KTMC representative who indicated that Alta's representation was false and that it paid all premiums to Alta. (Korber Aff. ¶ 18.)

---

[5]Alta does not dispute the allegations contained in the affidavit of Adelina Korber. (Alta's Reply to KTMC's Resp. to Alta's Proposed Findings of Fact in Supp. of Summ. J. 2 n.2.)

KTMC secured health insurance coverage for the plaintiffs, effective February 1, 2002, through Midwest Security Insurance Company. (Korber Aff. ¶ 10.) Due to the lack of insurance coverage from October 31, 2001 to February 1, 2002, the plaintiffs incurred medical expenses in excess of $43,000. (Korber Aff. ¶15.)

According to KTMC, KTMC also learned for the first time in late December 2001 that Alta planned to discontinue the Plan but that the Plan would be discontinued as of January 1, 2002. (Affidavit of Raino A. Koch ("Koch Aff.") ¶ 11, Feb. 15, 2006.)[6] On December 21, 2001, Raino Koch, the managing agent of KTMC in charge of overseeing employee benefits, (Koch Aff. ¶ 1), received a telephone call from David Johnson, Alta's Chicago-based sales representative, (Koch Aff. ¶ 9), who indicated that the Plan would not be renewed as of January 1, 2002. (Koch Aff. ¶ 11.) Koch became upset, objected to the short notice, and demanded to know the reason that the Plan was not being renewed. (Koch Aff. ¶ 11.) The record does not indicate how Johnson responded to Koch's inquiry. On December 24, 2001, Rodolfo Korber informed Koch that Adelina's claim for benefits had been denied by Alta. (Koch Aff. ¶ 12.) On December 26 or 27, 2001, Koch spoke with Roxanne Williams of the Chicago Alta office. (Koch Aff. ¶ 13.) Koch asked why the Korbers' claims were being denied and expressed a firm desire that the claims be paid. (*Id.*) Williams stated that Alta sent KTMC a notification of non-renewal in October 2001, and Williams stated that she would fax a copy of the letter to Koch. (*Id.*) Williams could not explain why the Korbers' claim for benefits was denied. (*Id.*) On

---

[6]Alta does not dispute the allegations contained in Koch's affidavit. (Alta's Reply to KTMC's Resp. to Alta's Proposed Findings of Fact in Supp. of Summ. J. 2 n.2.)

-6-
Case 2:03-cv-01416-JPS   Filed 09/28/06   Page 6 of 16   Document 127

December 27, 2001, Koch first received the letter dated October 2, 2001, in which Kathryn Gent of Alta's underwriting department explains the basis for non-renewal:

> Under the terms of your employee benefits contract, you are required to maintain 10 or more participating employees at all times. A recent audit of your account shows that you currently have fewer than this number covered.
>
> . . . .
>
> Your policy requires notification 60 days prior to termination. . . . Your contract will expire on January 1st, 2002.

(Koch Aff. ¶¶ 14-16; Ex. F.) However, there is no requirement of any minimum number of participating employees in any contractual document between KTMC and Alta. (Koch Aff. ¶ 17.) During the last week of December 2001, Koch spoke with Gent who indicated that the Plan was not going to be renewed regardless of the number of employees that participated in the Plan. (Koch Aff. ¶ 23.) Koch challenged the authenticity of the October 2, 2001 letter. (*Id.*) Gent stated that she had faxed the letter and that she possessed a copy of the fax transmission confirmation sheet. (Koch Aff. ¶¶ 23-24.) Koch requested a copy of the confirmation sheet, but Alta has not produced it. (Koch Aff. ¶ 24.) On January 1, 2002, David Johnson told Koch that the Service Contract was definitely not being renewed but that he was "almost sure" that KTMC would have coverage until January 1, 2002. (Koch Aff. ¶ 21.) On January 3, 2002, Koch faxed a letter to Alta, to the attention of David Johnson, reiterating the objection to termination and the need to cover the Korber's medical expenses. (Koch Aff. ¶ 22.) Koch's letter states in part,

> [B]ecause ALTA has been denying all of our claims over the past few weeks Rudy Korber's wife is being denied any further treatment for her

cancer. She was scheduled for another chemotherapy session on Monday, January 7th but because no claims have been paid and because the hospital was told that Rudy was no longer covered by ALTA they cancelled her session. She was told that she would require 3 or 4 sessions to take care of her cancer and she has only had one to date. This has been a very traumatic experience for them and they now worry about what they will have to do to pay for their existing medical bills.

I would like to put the Korbers at ease and tell them that December's claims will be paid by ALTA as you mentioned and that, knowing they would be paid, the hospital would go ahead with the chemotherapy. Please see what you can do about this. Thanks.

(Koch Aff. Ex. G.)

Because Alta did not respond to Koch's demand that the Korbers' claims be processed for the months of October, November, and December 2001, Koch asked David Johnson why Alta refused to process claims submitted in October, November, and December 2001, and why Alta was billing for coverage on January 24, 2002, if coverage ceased on December 31, 2001. (Koch Aff. ¶ 25.) Because Alta failed to answer these questions, Koch revoked the automatic check draft agreement with Tri-City National Bank on January 23, 2002, the mechanism by which Alta was to pay claims under the Plan. (Koch Aff. ¶ 27.) On March 8, 2002, Alta faxed a letter dated March 8, 2002, to KTMC indicating that it was suspending the processing of claims for KTMC employees due to non-payment of January and February payments. (Koch Aff. ¶ 28.)

III. Procedural history

On November 4, 2003, the Korbers filed suit against KTMC in the Circuit Court for Waukesha County, Wisconsin, alleging claims for breach of contract,

misrepresentation, fraud, equitable estoppel, specific performance, and negligent infliction of emotional distress. KTMC removed the action to this court on December 8, 2003, on the basis that the action relates to an ERISA employee benefit plan. On February 12, 2004, the Korbers filed an amended complaint, adding Alta as a defendant and omitting the various causes of action specified in the original complaint.

On April 16, 2004, KTMC filed a motion to dismiss on the basis that the plaintiffs may only recover plan benefits and that the plaintiffs seek "monetary damages" that are unavailable under ERISA. In response, the plaintiffs argued that they do seek to recover plan benefits. The plaintiffs also filed a proposed second amended complaint that omitted a request for compensatory and punitive damages. On July 15, 2004, the court denied KTMC's motion to dismiss and granted the plaintiffs leave to file a second amended complaint. The plaintiffs filed a second amended complaint on July 28, 2004. KTMC and Alta filed answers, and KTMC filed a cross-claim against Alta.

On March 24, 2005, KTMC filed a motion to dismiss on the basis that (1) no claim may be stated against KTMC under 29 U.S.C. § 1133 because KTMC is a plan administrator and not an employee benefit plan; and (2) the plaintiffs failed to state a claim for breach of fiduciary duty because they did not allege that KTMC was acting in a fiduciary capacity and because they seek only damages which are unavailable under ERISA. In a May 23, 2005 brief, Alta stated that it has an interest in determining whether KTMC is a fiduciary, and on June 1, 2005, Alta filed a

response to KTMC's motion to dismiss, arguing that the second amended complaint sufficiently alleges that KTMC is a plan fiduciary. On July 28, 2005, the court granted KTMC's motion to dismiss with respect to any claims premised upon 29 U.S.C. § 1133 because the plaintiffs did not contest KTMC's argument, but the court denied KTMC's motion in all other respects.

On October 27, 2005, based upon a stipulation signed by the plaintiffs and involuntary plaintiff Waukesha General & Vascular Surgery, S.C., the court signed an order dismissing Waukesha General & Vascular Surgery from the action. On October 28, 2005, the court held a status conference in which the plaintiffs, KTMC, and Alta participated. The plaintiffs stated that they needed four months to complete discovery, and the court set a discovery deadline for March 1, 2006.

On January 13, 2006, Alta filed a motion for summary judgment on the plaintiffs' claims. Alta's motion largely mirrors KTMC's March 24, 2005 motion to dismiss; Alta argues that (1) it is not a plan and cannot be liable under 29 U.S.C. § 1133; (2) Alta is not a fiduciary; (3) Alta is not liable under 29 U.S.C. § 1132(a)(3)(B) because the plaintiffs have a claim against the Plan under 29 U.S.C. § 1132(a)(1)(B); and (4) the plaintiffs seek monetary damages unavailable under ERISA. Both KTMC and the plaintiffs oppose Alta's motion. On May 1, 2006, KTMC filed a motion for summary judgment on its cross-claim against Alta. On June 9, 2006, Alta opposed KTMC's motion and filed a cross-motion for summary judgment on KTMC's cross-claim. On June 23, 2006, KTMC filed a motion to strike Alta's cross-motion on the basis that all dispositive motions were to be filed on or before

May 1, 2006, pursuant to the scheduling orders entered in this action. Alta responds that the court did not set a dispositive motion deadline at the October 28, 2005 status conference.

**ANALYSIS**

Summary judgment is appropriate where the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Material facts" are those facts which "might affect the outcome of the suit," and a material fact is "genuine" if a reasonable finder of fact could find in favor of the nonmoving party. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate where a party has failed to make "a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 256-57. A party opposing summary judgment may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). Any doubt as to the existence of a material fact is to be resolved against the moving party. *Anderson*, 477 U.S. at 255.

I.      KTMC's Cross-Claim against Alta

KTMC asserts a cross-claim against Alta based upon Alta's alleged failure to honor its contractual obligations. (*See* KTMC's Answer to Second Am. Compl. and Cross-cl. ¶¶ 31-46.) Specifically, KTMC alleges that Alta breached the Services Contract by (1) failing to provide sufficient notice before terminating the contract, (*id.*

¶ 40); (2) wrongfully converting KTMC's "paid-in surplus premiums," (*Id.*); and (3) refusing to honor claims for covered health care services incurred by plan participants including the plaintiffs. (*Id.*) KTMC alleges that Alta breached an indemnity provision in the Services Contract whereby Alta agreed to "indemnify, protect and hold [KTMC] harmless from any loss, liability, claim or expense (including attorneys' fees, court costs and expenses of litigation) arising out of the dishonest, fraudulent or criminal acts of [Alta's] employees, acting alone or in collusion with others." (*Id.* ¶ 45; Services Contract 5.) KTMC also alleges that Alta breached the Stop-Loss Contract by (1) failing to terminate the contract properly, (*id.* ¶ 41); and (2) failing to provide plan participants with the "terminal protection" coverage. (*Id.* ¶ 46; Stop-Loss Contract 7-8.)

These allegations suggest that KTMC's cross-claim against Alta is one for breach of contract, and there are several issues of material fact that preclude summary judgment for Alta, including: (1) whether Alta sent KTMC any written notice of contract termination before December 21, 2001; (2) whether Alta failed to process claims for Plan benefits prior to January 1, 2002; (3) whether KTMC expressly directed Alta to pay benefits to the Korbers; (4) if KTMC did direct Alta to pay benefits to the Korbers, why Alta did not process the Korbers' claim; (5) when and whether KTMC breached the agreements by allegedly failing to pay Alta $15,725.26 owed under the contracts; and (6) whether any Alta employee engaged in "dishonest" acts that would trigger Alta's duty to indemnify KTMC pursuant to the indemnification provision in the contract.

Neither KTMC nor Alta analyze KTMC's cross-claim in terms of a breach of contract. KTMC analyzes its claim by reference to 29 U.S.C. §§ 1104 and 1132(a)(1)(B), (*see* KTMC's Mem. of Law in Supp. of its Mot. for Summ. J. 3-4), and Alta largely confines its analysis to ERISA statutory sections. (*See* Alta's Br. in Opp'n to KTMC's Summ. J. on Cross-cl. 6-13.) Neither party suggests that ERISA preempts KTMC's breach of contract claim against Alta or that such a claim is otherwise not cognizable. Alta itself argues that its alleged refusal to pay Adelina's claim would constitute a breach of contract. (*See* Alta's Summ. J. Reply Br. 14, Mar. 2, 2006.) Because the parties have not analyzed whether KTMC's cross-claims against Alta are preempted by ERISA, the court is obliged to deny Alta's cross-motion for summary judgment. KTMC's motion to strike Alta's cross-motion shall be denied as moot.

The court must also deny KTMC's motion for summary judgment. KTMC alleges that Alta breached the Service Contract by, among other things, terminating the contract without providing notice 60 days in advance; in other words, KTMC alleges that Alta did not send the letter dated October 2, 2001, in October 2001. Alta does nothing more than state that "[a]ccording to Alta's business records," Alta faxed the letter to KTMC on October 2, 2001. (Moldenhauer Aff. ¶ 4.) This response is inadequate: KTMC does not deny the existence of a letter dated October 2, 2001; rather, KTMC denies that the letter was actually sent to KTMC in October 2001. Alta does not support its argument by submitting either (1) the affidavit of Kathryn Gent, the Alta employee who allegedly wrote the letter and faxed the letter on October 2,

2001; or (2) the copy of the fax transmission confirmation sheet that Gent indicated that she had in her possession. In any event, the court resolves any doubt as to the existence of a material fact against the moving party, so at this stage in the proceedings, the date on the letter itself is sufficient to create a triable issue regarding whether the letter was sent in October 2001.

The court also notes that the parties have not created a sufficient record of all of the pertinent issues in this action. As a preliminary matter, the plaintiffs should have attached the Plan to their second amended complaint, and KTMC should have attached the Service Contract and the Stop-Loss Contract to its cross-claim. Putting that aside and assuming the Stop-Loss Contract were still in effect, neither KTMC nor Alta suggests how much Alta would be required to reimburse KTMC, pursuant to the Stop-Loss Contract, for payment of Adelina's claim. The Stop-Loss Contract contains formulas for calculating the "Specific Stop-Loss Benefit" and the "Aggregate Stop-Loss Benefit," (*see* Stop-Loss Contract 5), but neither party has provided the court with the information necessary to make such calculations. Additionally, the parties are less than clear as to whether Alta processed Adelina's claim. The record indicates that Alta did not process Adelina's claim between October and December 2001, (Alta's Resp. to KTMC's Proposed Findings of Fact ¶ 18), but the record also indicates that Alta did process the claim and denied it. (Korber Aff. ¶¶ 8, 13, 17; Koch Aff. ¶¶ 12-13.) Alta claims that KTMC owes Alta $15,725.26 under the contracts, (Moldenhauer Aff. ¶ 7), but Alta does not explain how or when KTMC failed to make these payments. Alta disputes that it received a directive from KTMC

to pay Adelina's claim in December 2001 because "[t]here is no record of any such oral or written directive from KTMC prior to January 3, 2002," (Alta's Resp. to KTMC's Proposed Findings of Fact ¶ 18; Moldenhauer Aff. ¶¶ 8-9), but on December 26 or 27, 2001, Koch "expressed [his] firm desire [to Alta employee, Ms. Roxanne Williams] that [Adelina's] claims be paid," (Koch Aff. ¶ 13), an undisputed proposed fact. Because of the many omissions and inconsistencies in the parties' proposed findings of fact, the court is unable to declare with any certainty that any party is entitled to summary judgment upon KTMC's cross-claim. Therefore, the court denies KTMC's motion for summary judgment.

II.  Alta's Motion for Summary Judgment

Alta claims that it is not a benefit plan, a fiduciary with respect to the plan, or the plan administrator. Alta claims that KTMC is the fiduciary and plan administrator of the plan because KTMC had "the sole authority to control and manage the operation of the plan, having the full discretion to determine eligibility, interpret the plan, and determine whether benefit claims should be paid." (Alta's Summ. J. Br. 3.) Alta, however, concedes that it made the initial benefit determination and payment, (*id.*), although Alta claims that KTMC reimbursed Alta for the claims paid. (*Id.* 3-4.)

Because the facts in dispute are intertwined with the determination of whether Alta acted as a fiduciary, notwithstanding the language in the contracts, the court is obliged to deny Alta's motion for summary judgment on the plaintiffs' claims. Alta also argues that the plaintiffs seek relief that is not available under ERISA. The

-15-
Case 2:03-cv-01416-JPS    Filed 09/28/06    Page 15 of 16    Document 127

court has rejected this argument. (*See* Order, July 28, 2005.) In any event, Alta does not show that the plaintiffs are without any remedy under ERISA.

Accordingly,

**IT IS ORDERED** that Alta's motion for summary judgment be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that KTMC's motion for summary judgment be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that KTMC's motion to strike be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Alta's cross-motion for summary judgment be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin this   28th   day of September, 2006

BY THE COURT:

 s/ J. P. Stadtmueller
J. P. Stadtmueller
U.S. District Court